UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

NICHOLAS TALLEY, DONNA EVANS
TALLEY

        Plaintiffs,

    -against-

LOANCARE SERVICING, DIV. OF FNF,
SELENE FINANCE

        Defendants.

**MEMORANDUM AND ORDER**
15-CV-5017 (JMA) (AKT)

-----------------------------------------------------------------X

**APPEARANCES:**

Donna Evans Talley, Nicholas Talley
    *Pro se Plaintiffs*

Stuart L. Kossar, Esq.
Knuckles, Komosinski & Manfro, LLP
565 Taxter Road, Suite 590
Elmsford, New York 10523
    *Attorney for Defendant Selene Finance, LP*

Edward Rugino
Rosicki, Rosicki and Associates, P.C.
51 East Bethpage Road
Plainview, New York 11803
    *Attorney for Defendant LoanCare Servicing*

**AZRACK, United States District Judge:**

On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl.

at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

## I. BACKGROUND

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

## A. **The Bay Shore Mortgage**

On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became

defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.)  By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012.  (Id. at 5, 8-12.)  The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.)  On March 31, 2015, LoanCare assigned the mortgage to defendant Selene.  (Id. at 24-25.)

## B.  **The Foreclosure Proceeding**

Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and each month thereafter.  (Kossar Decl. Ex. J, ECF No. 42-11 at 3.)  As a result, LoanCare commenced an action against plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012.  (Id.)  In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification.  (Id. at 8.)  The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action.  (Id.)  The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law.  (Id. at 3.)  LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief.  (Id.)  The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing.  (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the RPAPL § 1303 and § 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior). The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further

ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

## C.  The Instant Action

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under:  (1) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350[1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud.[2] (Amend. Compl.)  Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable.[3]  (See Am. Compl.)

Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage.  (Id. at 3.)  Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009

---

[1] Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error.  (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

[2] Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss.  (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.)  A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013).  In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

[3] The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

through 2012.  (Id.)  Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.)  Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.)  Plaintiffs further allege that defendants have no standing under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs.  (Id. at 5-6.)  Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'."[4]  (Id. at 6.)  Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014.[5]  (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment."  (Id. at 4.)

---

[4] To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

[5] According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015.  (See Am. Compl. at 23-24.)  However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014.  (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted.[6]

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d

---

[6] Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

### 2. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata*).

## B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court

determinations). The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.'" <u>Alston v. Sebelius</u>, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), <u>adopted by</u>, 2014 U.S. Dist. LEXIS 122970 (E.D.N.Y. Sept. 2, 2014) (quoting <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, 422 F.3d 77, 84 (2d Cir. 2005)). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." <u>Park v. City of N.Y.</u>, No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." <u>Hoblock</u>, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. <u>Id.</u>

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." <u>Ashby v. Polinsky</u>, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), <u>aff'd</u>, 328 F. App'x 20 (2d Cir. 2009);

see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since those judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage

due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–Civ–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of *Rooker-Feldman* met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (See Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, *inter alia*, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious…").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what *Rooker-Feldman* forbids—to overturn the New York

Supreme Court judgment of foreclosure. See Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order].").  A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, . . . which is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid." Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of *Rooker-Feldman* by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails.  Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of *Rooker-Feldman*.[7]  (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.)  Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding.  Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker-Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano

---

[7] Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009.  (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.)  Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent.  (Id.)

v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under *Rooker-Feldman* and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted)). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the *Rooker–Feldman* doctrine fails.

Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. *Res judicata*

Alternatively, to the extent the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of *res judicata*. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated claim

even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745 F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005)). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir.1992)); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*. Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata*. First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County

Supreme Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl. Exs. I, J) and therefore cannot be relitigated in this Court. See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim . . . [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"): Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan

transaction do not appear to be of the type recognized by certain courts as immune from *res judicata*." ); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶ ¶ 3, 8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have

asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata* ).[8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted)). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.'" Modular Devices, Inc. v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997)). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015— after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to

---

[8] "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit an attack on a judgment" previously issued by the state court. Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest).  Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

**D.  Collateral Estoppel**

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).  Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment.  Id.  "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999)).  Thus, "[b]efore collateral estoppel can be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

"To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005))  "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action.  And, those issues were decided in LoanCare's favor.  As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property.  No appeal was filed in that action.  Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court.  See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fequiere v. Tribeca

Lending, No. 14-CV-812, 2016 WL 1057000, at *9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel.[9]

## E.  Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action.  (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.)  For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion.  Rule 11 requires that a motion for sanctions "be made separately from any other motion and . . . describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  In any event, the Court denies LoanCare's motion for sanctions.  Plaintiffs' claims against defendants are plainly without merit.  Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*.  Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit

---

[9] Because plaintiffs' claims fail under *Rooker-Feldman*, *res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

**F. <u>Leave to Amend</u>**

*Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Shomo v. City of New York</u>, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." <u>Boddie v. N.Y. State Div. of Parole</u>, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman*, *res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

_____/s/(JMA)_____
Joan M. Azrack
United States District Judge

Dated: August 31, 2018
      Central Islip, New York